## NEWMAN *v.* ALABAMA G. S. R. Co

*(Circuit Court, S. D. Mississippi, E. D.   May 24, 1889.)*

1. **CARRIERS OF PASSENGERS—INJURIES—DEFECTIVE TRACK.**
   In an action for damages for injuries to a passenger by the derailment of a car, several witnesses for plaintiff testified that the ties at the point where the accident occurred were in a very rotten condition, and that the rail was much worn and mashed. The only testimony to rebut this was that of defendant's section boss, who testified that he examined the track a day or two before the accident, and that the rail was sound, but admitted that one of the ties was somewhat decayed. Defendant did not produce the broken portion of the rail. *Held,* that plaintiff was entitled to recover.

2. **SAME—DAMAGES—DIABETES.**
   There being an irreconcilable conflict among the medical witnesses as to whether, if plaintiff has *diabetes* in its incurable form, the disease was caused by the accident, or was latent in his system prior thereto, and was in some measure accelerated by the accident, no damages can be allowed on account of such disease.

At Law.   Action by Louis T. Newman for damages for personal injuries.

*Miller, Smith & Hush,* for plaintiff.   *Fewell, Watkins & Brahan* and *John C. McMartin,* for defendant.

HILL, J.   This is an action brought by the plaintiff against the defendant for alleged injuries received by him while a passenger on defendant's train, caused by the negligence of defendant in not keeping its railroad track in sufficient repair.   Such is the substance of plaintiff's declaration, and to which the defendant has interposed the plea of the general issue, and upon which, by stipulation, the questions of fact as well as of law are submitted to the court, the finding of the court to be in lieu of the verdict of a jury.   The proof shows that the plaintiff was a passenger on defendant's train, and that he had paid his fare, and had a ticket from Chattanooga to Vicksburg, and had also paid the additional fare demanded, and was in the Mann boudoir car,—one of the cars in said train; that by reason of the breaking of one of the rails on the track said car was thrown from the track, and plaintiff was thrown from his seat or place of repose, and that by some sharp substance a deep cut or wound was made on the right side of his face, which severed one of the arteries, or perhaps two of them, from which a large quantity of blood flowed, which greatly weakened him, producing temporary faintness, and from

which he suffered considerable pain; that a considerable time elapsed before said wound was healed and cured; that soon after this accident a clot of blood made its appearance in the right eye,—the one next to the wound,—which to some extent injured the sight of the eye, and that since that time the hearing in the right ear has been impaired. The proof further shows that not long after the accident symptoms usually found in cases of *diabetes-mellitus* made their appearance in plaintiff, and which continue, and that since the accident plaintiff's health has not been as good as before; that he has expended several hundred dollars in the payment of physicians' bills for the treatment of his wound, and of the disease from which he has been suffering, and for medicines and board and other necessary purposes while under the treatment of said physicians; and that he has been detained from his business, and has not attended to his business as formerly. It is charged that all the suffering and expense to which plaintiff has been subject since the accident have been the result thereof, and that it caused the disease known as *diabetes-mellitus*, which, it is alleged, is incurable, and from which plaintiff will have to suffer during the remainder of his life, if it is not shortened thereby. The first question is to determine whether or not the defendant is liable to plaintiff by reason of the carelessness and negligence in not keeping its road-bed and track in sufficient repair. That the accident was the result of the broken rail is admitted, but it is insisted that the defect of the rail, if any, was such as could not be discovered, and that the road-bed and cross-ties were all sufficiently sound, and in good order. The only witness introduced by the defendant on this question is the section boss who had charge of this part of the road, and he testifies that such was the fact, except that one of the cross-ties where the broken rail was fastened on the track was decayed; but he states that it was not rotten. To rebut his evidence some six or seven disinterested witnesses testify that the cross-ties at that place were very rotten; that the rails were old and very much worn, and the flanges were broken down, and the broken rail was mashed at the place where it was broken. Some two of the witnesses, who live near the place, testify that the rails at that place were old rails, brought from other places and put in. One witness testifies that he had a son employed in running over that part of this road, and that the track was in such dangerous condition that he had tried to induce his son to quit the road for fear of an accident. In considering the evidence I only take into consideration that which relates to the place where the accident occurred. The proof shows that the broken portions of the rail have been sent off to the rolling-mill, and have not been produced, either on this trial or on a trial at Birmingham for damages resulting from the same accident. They would have been important evidence for the defendant, if in its favor, and its non-production is a strong circumstance to show that, if produced, it would have sustained the cause of plaintiff, as it would have shown whether the rail was mashed down where broken, as testified to by plaintiff's witnesses. Besides, no other witnesses than the section boss have been introduced by defendant to show the condition of the track, or what caused the acci-

dent. The section boss testifies that the decayed cross-tie, where the rail was broken, was mashed partly down; he testifies that he had passed over this part of the road and examined it either that day or the day before, and that some eight or nine trains passed over it daily, and that this was the first accident which had occurred at that point; and this fact, it is insisted, strengthens the testimony of Harper, the section boss, and which, taken in connection with the fact that it was his duty to examine the track, his testimony should outweigh that of the other witnesses; but I cannot concur in this view, and must hold that the weight of the testimony establishes negligence on the part of the defendant, and a liability to the plaintiff for the injuries received. That the plaintiff suffered great loss of blood, and would have lost his life had not skilled aid been obtained, and that he also suffered considerable bodily pain and loss from his business by reason of the accident, is proven beyond a doubt. The preponderance of the proof also shows some impairment of the hearing, and some temporary injury to the right eye, but neither of which, at present, seems to be very serious. What these injuries may prove to be in the future is uncertain. The most difficult question to determine is as to whether or not the symptoms of the disease known as *diabetes* were caused by the injuries received, and as to whether or not it is of that type supposed to be incurable. There has been produced upon the trial on this point the testimony of a number of medical gentlemen of known experience, skill, and ability in their profession, establishing almost beyond controversy two propositions: *First*, that doctors will differ; and, *secondly*, that they have not yet ascertained the true origin of the disease called *diabetes*. On this point they admit that they are at sea; some holding, more as matter of speculation, one cause, and some another. It seems, however, pretty well settled that some races are more liable to it than others. It is also thought to be in some instances hereditary; but it doubtless depends for its origin upon different conditions of the body, with the performance or non-performance of the different functions of the body, as well as season of the year, climate, etc. It is held by these medical gentlemen, or some of them, at least, that there is a predisposition to the disease in some persons, and which exists for some time before it is known by the patient; that this latent condition can be called into active exercise by personal injury or other causes; that some personal injuries received on particular portions of the head will produce, or at least accelerate, this disease. But, after considering and weighing all the testimony on this question, I am brought to the conclusion that the weight of the evidence is rather against than in favor of the conclusion that the disease, whatever it is, under which the plaintiff suffers, in this particular was produced by the injury received in the accident mentioned in the pleadings; and that as to whether, if it is *diabetes* of that type supposed to be incurable, it had its existence in the system before the accident, and, whether accelerated, if at all, by the accident, is too uncertain upon which to estimate the damages claimed. But I am satisfied that for the suffering the plaintiff has endured from loss of blood, which so nearly endangered his life, the

pain he endured, the temporary, if not permanent, impairment of his eyesight and hearing, and his loss of time and attention to business, the amount of money paid for medical aid, expenses in prosecuting his suit, including counsel's fees, the sum of $5,000 should be awarded him as his damages. The finding of facts will be in favor of the plaintiff for that sum, and the costs against the defendant, for which judgment will be entered.